## Muncy v. Smith.

(Decided February 10, 1911.)

### Appeal from Harlan Circuit Court.

1. Land—Title Thereto—Adverse Possession—Limitation—Champerty.—The evidence in this action shows that at the time appellant bought the land in controversy it was in the actual adverse possession of another, and that it has been in the adverse and uninterrupted possession of appellee and those under whom he claims for more than fifty years, and therefore appellant's action is barred both by the statutes of limitation and champerty.

2. Pleading—Denying Evidence of Title—Redundancy.—Where, in an action for title to land the answer denied plaintiff's title to the land, or to any part thereof, and averred title in himself, this was sufficient without a denial of the mere evidence of the alleged title, such evidence so pleaded being redundant or irrelevant matter not required by the rules of pleading to be traversed.

G. A. EVERSOLE, JOHN W. CHALKLEY and CHAS. H. MORRIS for appellant.

H. C. CLAY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

In this action appellee asserted title to fifty acres of land in Harlan county, described in the petition, subject to a dower interest therein alleged to have been formerly owned by the widow of Elisha Helton, deceased, but now owned, as further alleged, by appellant. The prayer of the petition asked that such dower be assigned appellant and that commissioners be appointed to allot it.

The answer denied appellee's title to the land, or any part thereof, alleged title to the whole in appellant, and pleaded the statutes of limitation and champerty.

The record shows that the land in question was patented to Barbary Helton in 1846; that in 1852 she, by deed, conveyed it to her son, Elisha Helton, who remained on the land with his family until the latter part of the year 1856, and then left it and removed to Leslie county; that he later returned to Harlan county, but did not again go upon this land. In 1861 he enlisted as a soldier in the United States Army from the State of Indiana, and in 1863 died in the service. He was survived by a widow and three children, who were living in Indiana at the time of his death, but soon thereafter returned to Ken-

tucky and established their residence in a different neighborhood from that in which this land is situated.

The controversy between appellant and appellee over the title to the fifty acre tract of land arises in this manner. It is claimed by the former that Elisha Helton when he left the land in 1856 and removed to Leslie county sold it to his brother, James Helton, but without executing to him a deed therefor, and that James Helton remained in the actual possession of the land from that time until his death, which occurred in 1902; that in 1869 or 1870, Hetty Helton, widow of Elisha Helton, deceased, sold and by deed, duly acknowledged and recorded, conveyed to James Helton her dower in the land; that shortly before his death, James Helton by deed, also duly acknowledged and recorded, conveyed the fifty acre tract of land, with other tracts adjacent, to his daughter, Matilda Howard, who had actual possession thereof from the death of her father until February 8th, 1907, when she, together with her husband, made a sale and conveyance of the land, by proper deed, to the appellant, who has since owned and been in the actual possession thereof.

It is contended by appellee that Elisha Helton was the owner of the land at the time of his death, upon the happening of which event, the title thereto descended to his three children, Carter Helton, Elijah Helton and Mahala Taylor, subject to the dower of his widow, which she thereafter sold and conveyed to James Helton by whom it was conveyed to Matilda Howard who, in turn, conveyed it to appellant, but that the title remained in the children of Elisha Helton, subject to the dower, until they, December 31, 1906, sold and conveyed it to appellee.

We find the evidence quite voluminous and in some respects conflicting, but in our opinion the great weight of it satisfactorily establishes the facts: 1st, That Elisha Helton in 1856, made a parol sale of the land in question to his brother, James Helton, who then lived on an adjoining tract which Barbary Helton had conveyed him; that Elisha Helton then put James in possession of the land and removed with his family to Leslie county, where he remained several years and until shortly before the beginning of the Civil War, when he returned to Harlan county, but to a neighborhood several miles distant from that in which he had formerly resided, and from the latter neighborhood removed to Indiana where he joined the army and later died while still a soldier; that Elisha Helton, after selling and delivering possession of the fifty-

acre tract of land to James Helton, was never heard to assert claim to it, or deny James Helton's right thereto. 2nd, That James Helton had and held the actual possession of the land uninterruptedly, continuously and adversely to all others, claiming it according to the boundary lines of the Barbary Helton patent, from the time Elisha left it in his possession in 1856, until his (James) death in 1902, and that in 1869 or 1870, immediately following the sale and conveyance to him by Elisha Helton's widow of her dower in the land, he moved with his family into the dwelling house situated thereon and continued to occupy it as a place of residence until his death.    3rd, That after the return of Elisha Helton's wife and three children from Indiana to Kentucky, following the enlistment of Elisha as a soldier, they resided on rented land and in a neighborhood of Harlan county other than that in which the land in controversy was situated, and shortly after Elisha's death, were moved by James Helton to and upon the land he got of Elisha, in order, as he then stated, that he might assist the widow in raising her children; she being the sister of his wife, as well as his sister-in-law, and at that time the owner of a dower interest in the land; that the widow and her children remained on the land and were assisted by James Helton until 1869 or 1870, when she formed a discreditable liaison with Milton Simpson, on account of which James Helton made her leave the land, and when she left it with Simpson she carried her daughter, Mahala, with her, the two sons remaining with their uncle James. But, upon leaving the land, the widow, for a sufficient consideration, then paid her by James Helton, sold and by deed conveyed him her dower interest therein.    4th, That at no time after Elisha Helton left the land, did his widow or children set up claim to it, nor did the widow, after leaving the land, ever assert claim to dower therein, although her right thereto was recognized and purchased by James Helton, as previously stated.    5th, That Matilda Howard, upon the death of her father, James Helton, in 1902, by virtue of the deed from him, took possession of the land and had actual possession thereof down to the time she sold and conveyed it to appellant, who thereupon moved upon it and has ever since been in the actual possession thereof.    6th, That appellee during Matilda Howard's actual, adverse possession of the land, purchased the alleged interest of the children of Elisha Helton therein and received from

them a deed purporting to convey it to him, subject to their mother's dower.

The foregoing facts were testified to by Matilda How-ard, appellant's grantor, by the widow and children of Elisha Helton, and quite a number of apparently intelligent and credible persons living in or near the neighborhood of the land in controversy, and having an acquaintance of many years' standing with the land and Helton family; and this testimony, together with the circumstances attending the removal of Elisha Helton from the land, his failing to thereafter return to it or claim it, James Helton's long and uninterrupted actual possession of the land, adversely to all others from 1856 to 1902, and the similar possession of his daughter, Matilda Howard, from his death down to the time of her sale and conveyance of it to appellant, clearly establish the latter's claim and possessory right to the land. If it be conceded that James Helton's possession from the time Elisha Helton left it until the time of his (James) purchase of the widow's dower, say in 1870, was merely a joint tenancy, the widow and children of Elisha Helton being the co-tenants, as, according to the evidence, his possession from the time he acquired the dower down to the date of his sale and conveyance to his daughter, Matilda Howard, in 1902, as was hers from that time down to the date of the conveyance to appellant in 1907, being actual and adverse to the heirs at law of Elisha Helton and all others, under a claim of absolute ownership of the land, with notice thereof to the heirs, the possession of the two thus covering thirty-six years, would bar any claim that might be asserted to the land by the heirs at law or any person claiming through them. So, whether the possession of appellant and those under whom he claims, began in 1856, fifty-one years before the institution of appellee's action, or in 1870, thirty-six years before its institution, the bar afforded by the statute of limitations would be complete.

In expressing the above conclusion as to the merit of appellant's defense, we have not ignored the evidence furnished by appellee, his witnesses, Simpson, the two Howards, and others, who testified as to the character of appellant's vendor's possession of the land, and some of them, to admissions made on one or more occasions by James Helton before his death, apparently limiting his interest in the land to the dower he purchased of the widow. But the most material of these admissions were

those mentioned by S. J. C. Howard, who at the time the admissions were said to have been made, sustained to James Helton the relation of attorney, for which reason proof of such admissions was incompetent, and being objected to, should have been excluded.

S. J. C. Howard also testified to certain statements claimed to have been made by the sons of Elisha Helton, in which he said they set up claim to the land, subject to the dower; but they, though introduced by appellee, denied the statements attributed to them by S. J. C. Howard, and testified that they were induced to sign and acknowledge the deed which purports to convey appellee the land in controversy, subject to the dower, by the representations of Thomas Howard, who advised them that it was a quit-claim deed to their cousin, Matilda Howard, and was requested by her to cure whatever defects there might be in her title to the land. These two witnesses also contradicted the witness, Milton Simpson, as to certain statements he testified were made by them and their deceased uncle, James Helton, in regard to their having an interest in the land; and both disavowed such interest.

Much evidence was introduced by each party to contradict, or impeach the character witnesses of the other. It will serve no good purpose to discuss this evidence, or to indicate to what extent any of the witnesses were discredited. Our conclusion that appellant's defense is sustained by the evidence rests more upon the conduct and dealings of the parties shown to have been in possession of the land under a claim of title or possessory right, and the circumstances under which they acquired or surrendered such possession, than upon the mere statements of witnesses found in the record, much of which is conflicting and unreliable.

Appellant's right to the land in controversy cannot rest upon the unenforcible parol contract made between his remote vendor, James Helton, and Elisha Helton; but the actual possession of the land acquired by the former under that contract having continued uninterruptedly, adversely and notoriously in him and his vendees down to and including appellant, for such a time as will, under the statute of limitations bar a recovery of the land, even by an infant, no legal ground can be found for depriving him of it. Not only is the action barred by the statute of limitations, but appellee's attempted purchase of the land from the heirs of Elisha Helton was champertous and void, as appellant's immediate vendor, Ma-

tilda Howard, was then in the actual, adverse possession thereof, under the deed from her father, James Helton; and whatever may have been the character of the latter's possession before his purchase of the widow's dower in 1870, the evidence is conclusive that his claim of possession and ownership since that time included the fee and was adverse to the heirs at law of Elisha Helton, and such was the character of Matilda Howard's claim and possession from the time she received the deed until she sold and conveyed the land to appellant, whose claim and possession have been of like nature. It is patent, therefore, that appellee's action is barred both by the statutes of limitation and champerty.

There is no merit in the contention of appellee's counsel that appellee was entitled to judgment on the pleadings. The contention is based on the ground that as the answer does not in specific terms traverse the averments of the petition as to the manner in which appellee acquired his alleged title, it made no issue as to his title. The contention is hypercritical; the answer denied appellee's title to the land, or any part thereof, averred title in appellant to the whole, as described in the petition, and how such title was derived. This was sufficient without a denial of the mere evidence of appellee's alleged title set out in the petition; the evidence so pleaded being redundant or irrelevant matter, not required by the rules of pleading to be traversed. (Newman's Pleading and Practice, sec. 403a.)

The judgment of the circuit court being against the weight of the evidence, it is reversed, and cause remanded with directions to that court to dismiss the action.